## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

REVIER TECHNOLOGIES, INC., *et al.,*

*Plaintiffs,*

v.

LOEFFLER, *et al.,*

*Defendants.*

CASE NO. 2:25-cv-02328

JUDGE ST. JOHN
MAG. NORTH

## DECLARATION OF TREVOR SKELLY

I, Trevor Skelly, declare as follows:

1. My name is Trevor Skelly. I am a resident of Miami, Florida. I am over eighteen years of age. This declaration is based upon my personal knowledge and the knowledge I have acquired in the course of my career and duties. If called as a witness, I could and would testify competently to the matters set forth below. I provide this declaration in support of the Proposed Intervenors' Motion to Intervene.

2. I am currently the Chief Executive Officer of GovContractPros (GCP)—a federal regulatory consulting firm advising small businesses and other firms in the federal marketplace.

3. Prior to GCP, I served in the Office of General Counsel at the Pension Benefit Guaranty Corporation and as a Contracting Officer in the U.S. Navy. In these roles, I advised on appropriations, procurement policy, and source selection procedures, ethics, and personnel matters.

4. I am also an attorney. I hold a J.D. from Boston College Law School and began my legal career as a tax associate at Goodwin, specializing in real estate and venture capital transactions.

**GovContractPros, LLC Advises 8(a) Applicants and Firms.**

5.    GCP advises small businesses on the Small Business Administration (SBA)'s 8(a) program, the Women-Owned Small Business (WOSB) program, the Service-Disabled Veteran-Owned Small Business (SDVOSB) program, and the HUBZone[1] programs.

6.    GCP assists clients in obtaining and preserving their SBA-socio-economic certifications, as well as navigating various business development activities including the SBA's Mentor-Protégé Program, joint venturing, and mergers and acquisitions. We also advise clients on Federal Acquisition Regulation (FAR) related matters during the pre-award and post-award process for federal contracts.

7.    Since it was founded in 2017, advising 8(a) applicants and firms has been a key mission of GCP. GCP's Chairman, John Shoraka, previously served as the Associate Administrator for Government Contract and Business Development at the SBA. As a senior SBA official, John led federal small business set-aside programs, including the 8(a) program. He also championed the Mentor-Protégé Program and worked hard to implement the 8(a) program and SBA's other initiatives.

8.    When John founded GCP, he brought his experience and others' collective enthusiasm for the federal government's small business initiatives to the private sector.

9.    To date, GCP has aided more than thirty (30) 8(a) applicants in successfully obtaining 8(a) certification. GCP also helps keep firms' 8(a) certifications active and in good standing, so that they are compliant and ready for audits, renewals and competitive bids. Avoiding compliance gaps helps small business to continue accessing federal contracting opportunities.

---

[1] The HUBzone program helps small businesses in historically underutilized business zones.

2

10.    Our work includes, but is not limited to, assisting individually owned firm applicants as they prepare affirmative evidence, which has often included narratives, to explain how their owner(s) are socially disadvantaged for purposes of qualifying for the 8(a) program.[2] We interview clients and help them unpack their experiences and figure out the best way to share their stories.

11.    For the social-disadvantage narrative, applicants have been required to provide two examples of either employment, financial, or education-based discrimination. Narratives need to be fairly detailed and specific. We have seen SBA reject narratives that lack specificity or ask applicants to identify by name individuals anonymously included in their narratives.

12.    Sometimes clients are hesitant to discuss recent experiences of discrimination, especially if they feel embarrassed, traumatized, or if their story would expose someone that they still work with or would otherwise jeopardize their professional relationships.

13.    Though many of our clients' narratives focus on instances of discrimination that happened years earlier, their stories demonstrate that discrimination can still be a barrier to business development and access to opportunities.

14.    For example, many clients recount past employment-based discrimination, like being passed up for promotions or denied access to management programs based on their race or sex, or other discriminatory factors. When individuals are denied promotions or similar opportunities, they are often deprived of skills that they could use at their companies or within their own small businesses. This impacts their ability to be effective small business owners in the future.

---

[2] These narratives are only applicable for firms owned by individuals and are not required for firms owned by entities (American Indian Tribes, Native Hawaiian Organizations, or Alaskan Native Corporation).

**The 8(a) Program Benefits Small Businesses and the Federal Government.**

15.    The 8(a) program is an important business development resource for small businesses. The program is designed to grow small firms over the course of nine years, with the hopes that participants will scale out of 8(a) eligibility and grow into larger businesses that are well-developed to handle substantial government contracts. One way that the 8(a) program accomplishes that goal is by giving certified firms critical access to primary contracting opportunities with the federal government.

16.    Acting as a prime contractor (or "prime") really matters for the growth of small businesses who work with federal agencies. Primes directly interface with agency officials—from program managers to contract staff, and even finance personnel. Learning to navigate those interactions and the unique complexities of federal contracting is a transferrable skillset that prepares a small business for bigger federal contracts.

17.    Based on the procurement work I handled for the Navy from 2007 to 2015, I know there is a difference in the kind of firms who have access to and win large federal contracts. Through market research, contracting agencies identify a narrow set of potential primes based on their experience in federal contracting and technical expertise. Demonstrating relevant experience and proficiency is essential, and even more important than having a lower contract price than your competition.

18.    Smaller, lesser-known and less experienced businesses are typically subcontractors to prime firms. Although federal contracting policies require primes to issue a certain percentage of their subcontracts to small businesses, those policies are largely aspirational. There are no real consequences for primes who fail to select the appropriate number of small business subcontractors.

4

19. The 8(a) program affords small businesses the opportunity to build the past performance and technical expertise necessary to win work as a prime. This access to opportunity and experience is essential, especially for minority small businesses owners who may have been denied comparable opportunities to learn and grow in the past.

20. The 8(a) program also improves government efficiency. Contracts and procurement agreements with 8(a) companies are processed much faster than agreements with non-8(a) firms. Internal approval could happen in a matter of weeks, rather than months.

21. Additionally, 8(a) awards cannot be protested as easily—removing another source of delay in government contracting. This is great both for small firms that often have less capital and therefore less tolerance for payment delays, and for the government's ability to quickly get what it needs.

**Invalidating 8(a) Regulation Would Harm GCP's Business.**

22. As our founder, John, posited this past December, it appears that "this Administration's objective is to terminate the 8(a) program, if not by statutory change, then through death by a thousand cuts."[3] I agree. SBA has not issued any new 8(a) certifications since August of 2025. And based on GCP's own data, SBA funding is down by fifty percent.

23. Nearly half of GCP's business comes from our work assisting 8(a) applicants and firms. As SBA's support for the 8(a) program declines, so does our business. We have seen a fifty percent (50%) reduction in the amount of 8(a) related business we conducted over the last year. What is more, the SBA's refusal to approve or deny 8(a) applications, with corresponding statutory and regulatory relief and right of appeals, has had a chilling effect on the market which has disincentivized potentially eligible future participants from submitting applications to this

---

[3] John Shoraka, A Turning Point for the 8(a) Program: A Message from Our Chairman, GCP (Dec. 11, 2025) https://govcontractpros.com/press-release/a-turning-point-for-the-8a-program/

5

program. This action or inaction by the SBA continues to impact our revenue through assistance and advisory services to 8(a) applicants.

24.    If the plaintiffs in *Revier v. SBA* are successful, and the 8(a) program is significantly curtailed, GCP would lose approximately $1 million dollars of revenue. That loss would be devastating for GCP's business operations and would require substantial staff layoffs, almost immediately.

### The 8(A) Program is Worth Defending.

25.    The government's unwillingness to defend the 8(a) program against plaintiffs' challenge here is a deliberate decision to let the 8(a) program wither on the vine and ignore policy and process along the way. This is egregious for a number of reasons:

26.    First, the 8(a) program is meant to be an incubator for small businesses. Small businesses are what make this country work. But it is those small businesses—owned and operated by people that want to do good work for our government—that would suffer if plaintiffs' requested relief is granted.

27.    Second, minority business owners will bear the brunt of any attack on the 8(a) program. Minority businesses contribute to the success of this country; diminishing their opportunities for federal contracts, and making their participation in business development harder, could permanently cast them out of meaningful small business ownership the future. In that way, the 8(a) program is larger and much more impactful than just one federal government initiative.

28.    Finally, and equally important here, is the parties' disregard for proper process. The 8(a) program is a congressionally mandated initiative. Those who oppose it should propose statutory or regulatory change through normal processes, not seek to invalidate the entire regulation governing the program via a disingenuous lawsuit that truly challenges only a tiny aspect of it.

6

29.    It is not fair for plaintiffs to challenge the 8(a) program, without anyone on the other side to defend it and at the expense of small businesses and minority business owners who need it the most.

Dated this __8th__ day of May, 2026

Trevor Skelly
CEO of GovContractPros
Miami, Florida