**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

REVIER TECHNOLOGIES, INC., *et al.,*

      *Plaintiffs*,

    v.

LOEFFLER, *et al.*,

      *Defendants.*

CASE NO. 2:25-cv-02328

JUDGE ST. JOHN
MAG. NORTH

Submission Date: July 22, 2026

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED
<u>DEFENDANT-INTERVENORS' MOTION TO INTERVENE</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION.............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

    I.    Statutory and Regulatory Background ............................................................... 3

    II.   Proposed Intervenors................................................................................... 5

    III.  Procedural History...................................................................................... 7

ARGUMENT.................................................................................................................... 10

    I.    Proposed Intervenors Have a Right to Intervene............................................. 10

          A.     This intervention motion is timely........................................... 10

          B.     Proposed Intervenors have a legally protectable interest in the existence and effective implementation of the 8(a) Regulation. .............................. 13

          C.     Proposed Intervenors' interests will be impaired if Plaintiffs succeed..... 16

          D.     SBA will not adequately represent Intervenors' interests going forward. 17

    II.   Alternatively, the Court Should Grant Proposed Intervenors Permission to Intervene. . 19

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Adarand Constructors v. Pena*,
515 U.S. 212 (1995) .................................................................................... 3, 17, 19

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) ....................................................................... 14, 17, 18

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022) ............................................................................................. 11

*Ceres Gulf v. Cooper*,
957 F.2d 1199 (5th Cir. 1992) .............................................................................. 13

*City of Houston v. Am. Traffic Sols., Inc.*,
668 F.3d 291 (5th Cir. 2012) ........................................................................... 14, 15

*Cook Cnty. v. Mayorkas*, 340 F.R.D. 35, 45 (N.D. Ill. 2021,
*aff'd sub nom. Cook Cnty. v. Texas*, 37 F.4th 1335 (7th Cir. 2022) ......................................... 12

*Davis v. Lifetime Cap., Inc.*,
560 F.App'x 477 (6th Cir. 2014) ......................................................................... 12

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ............................................................................. 13, 17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ............................................................................................... 2

*Gen. Land Off. v. Trump*, No. 24-40447,
2025 WL 1410414 (5th Cir. May 15, 2025) ............................................................. 12

*Grubbs v. Norris*,
870 F.2d 343 (6th Cir. 1989) .............................................................................. 12

*Heaton v. Monogram Credit Card Bank of Ga.*,
297 F.3d 416 (5th Cir. 2002) .............................................................................. 17

*In re Estelle*,
516 F.2d 480 (5th Cir. 1975) .............................................................................. 19

*John Doe #1 v. Glickman*,
256 F.3d 371 (5th Cir. 2001) ....................................................................... 10, 11, 17

*Jurisich Oysters, LLC v. U.S. Army Corps of Eng'rs*, No. 24-106,
2024 WL 3639528 (E.D. La. Aug. 2, 2024) ............................................................. 14

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ................................................................... 10, 13

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
884 F.2d 185 (5th Cir. 1989) ............................................................................... 19

*McDonald v. E.J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) ............................................................................ 12

*Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*,
831 F.2d 59 (5th Cir. 1987) ................................................................................. 13

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984) ............................................................................... 13

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168,
2022 WL 17492273 (5th Cir. Dec. 7, 2022) ..................................................... 14, 15

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ............................................................................ 13

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) ......................................................................... 11, 12

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) ............................................................................... 12

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ...................................................................... 10, 11, 17

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) ............................................................................... 19

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ...................................................... 10, 13, 14, 15, 17

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*,
332 F.3d 815 (5th Cir. 2003) ............................................................................... 19

*U.S. v. City of Miami*,
664 F.2d 435 (5th Cir. 1981) ............................................................................... 16

*U.S. v. City of New Orleans*, 35 F. Supp. 3d 788 (E.D. La.),
*aff'd*, 731 F.3d 434 (5th Cir. 2013) .................................................................... 16

iv

*Ultima Services Corp. v. Department of Agriculture*,
 683 F. Supp. 3d 745 (E.D. Tenn. 2023)..................................................................... 1, 5

*United Airlines, Inc. v. McDonald*,
 432 U.S. 385 (1977).......................................................................................... 11

*Va. H. of Delegates v. Bethune-Hill*,
 587 U.S. 658 (2019).......................................................................................... 14

*Wachob Leasing Co., Inc. v. Gulfport Aviation Partners, LLC*, No. 1:15-cv-237,
 2016 WL 10568063 (S.D. Miss. Nov. 30, 2016) ......................................................... 19

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
 834 F.3d 562 (5th Cir. 2016) ......................................................................... 14, 15

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) ............................................................................. 16

## STATUTES & REGULATIONS

15 U.S.C. § 51............................................................................................................. 3

15 U.S.C. § 631........................................................................................................ 1, 4

15 U.S.C. § 637........................................................................................................ 4, 5

15 U.S.C. § 657f .......................................................................................................... 4

28 U.S.C.§ 530D ......................................................................................................... 9

13 C.F.R. § 121 ............................................................................................... 1, 7, 8, 16

13 C.F.R. § 124 ....................................................................................................*passim*

13 C.F.R § 134 ..................................................................................................... 1, 7, 8

63 Fed. Reg. 35726 ........................................................................................ 1, 7, 8, 16, 17

91 Fed. Reg. 35433 ....................................................................................................... 2

## FEDERAL RULES

Fed. R. Civ. P. 15 (a)(2)............................................................................................... 16

Fed. R. Civ. P. 24...................................................................................................*passim*

**<u>OTHER AUTHORITIES</u>**

*Guidance on 8(a) Program Mandate*, SBA (Jan. 22, 2026),
    https://perma.cc/U3S9-BQAC ................................................................................ 5

Memorandum on *Impact of Recent Court Decision (Ultima Servs. Corp. v. Dep't of Ag.
    (E.D. Tenn.)) on the use of the 8(a) Program* (Aug. 18, 2023),
    https://perma.cc/NKD2-2B7V ........................................................................... 1, 5

**INTRODUCTION**

Proposed Intervenors Sage Services Group ("Sage") and GovContractPros ("GCP") move to intervene—by right, or in the alternative, by permission—to defend a rule promulgated by the U.S. Small Business Administration ("SBA"), 63 Fed. Reg. 35726, codified at 13 C.F.R. parts 121, 124, and 134 (collectively herein the "8(a) Regulation"), to help ensure historically disadvantaged small business owners have meaningful access to certain federal contracts, as required by Section 8(a) of the Small Business Act of 1953 (the "Act"), 15 U.S.C. § 631 *et seq.*

Congress established the 8(a) program to provide business development assistance to small businesses owned by "socially and economically disadvantaged individuals." *Id.* § 631. Consistent with congressional findings that certain individuals are at a disadvantage due to the effects of discriminatory practices or similar invidious circumstances over which they have no control, *see* 15 U.S.C. § 631(f)(1)(B)-(C), the 8(a) Regulation presumes that certain minority-owned businesses are socially disadvantaged for purposes of the 8(a) program's eligibility requirements. The presumption is not a guarantee that an individual will be found to be socially disadvantaged for purposes of the program—the presumption may be rebutted—and individuals who do not fall within the presumption can establish social disadvantage by other, race-neutral means. *See* 13 C.F.R. §§ 124.103(b)(3), (c)(1), (c)(2)(i). Moreover, following a decision in *Ultima Services Corp. v. Department of Agriculture*, 683 F. Supp. 3d 745 (E.D. Tenn. 2023), SBA no longer uses the rebuttable presumption in administering the 8(a) program,[1] and has recently proposed a rule that

---

[1] *See* Memorandum from Dr. Donna Peebles, Assoc. Adm'r, Off. of Bus. Dev., Small Bus. Admin., to Fed. Chief Acquisition Officers & Senior Procurement Execs., *Impact of Recent Court Decision (Ultima Servs. Corp. v. Dep't of Ag. (E.D. Tenn.)) on the use of the 8(a) Program* (Aug. 18, 2023), https://perma.cc/NKD2-2B7V.

would eliminate the presumption.[2]

Nevertheless, Plaintiffs Revier Technologies, Inc. and Young America's Foundation ("YAF") claim that they cannot apply on an equal footing to two government programs, run by the U.S. Department of Treasury ("Treasury") and the U.S. Department of Homeland Security ("DHS"), because those programs allegedly use the 8(a) Regulation's rebuttable presumption. But like the 8(a) program, neither Plaintiffs nor the government provide any evidence that Treasury or DHS programs use the presumption at all. *See* Proposed Defendant-Intervenors' Proposed Motion to Dismiss (herein "MTD") (filed concurrently herewith). And even if they were, neither Treasury nor DHS is a party to this lawsuit, so the Court could not grant Plaintiffs any effective relief. *See id.* at 20.

Further, Plaintiffs' Complaint seeks vacatur of the 8(a) Regulation in its entirety, even though the 8(a) Regulation encompasses implementing provisions well beyond the rebuttable presumption. Plaintiffs thus ask this Court to ignore well-established principles of judicial restraint and constitutional avoidance and grant relief surpassing the scope of Plaintiffs' claims. *See id.* at 17-18; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." (internal quotations and citations omitted)).

Despite this, SBA and the U.S. Department of Justice ("DOJ") (collectively "Defendants") have acquiesced in Plaintiffs' gambit and abdicated their responsibility to defend the 8(a)

---

[2] *See* 91 Fed. Reg. 35433, "Reforms To Remove SBA's 8(a) Program's Rebuttable Presumption of Social Disadvantage for Individually Owned Firms Only," https://www.federalregister.gov/documents/2026/06/11/2026-11765/reforms-to-remove-sbas-8a-programs-rebuttable-presumption-of-social-disadvantage-for-individually.

Regulation (and appropriate jurisdictional and remedial boundaries). In lieu of an answer, Defendants recently filed in this case a November 25, 2025, letter to Congress as Defendants' response to Plaintiffs' Complaint, which states that the DOJ will not defend the constitutionality of 8(a) program's rebuttable presumption. ECF No. 45. Additionally, Defendants are preparing to enter into a settlement agreement with litigants who lack standing, request relief that would go well beyond their challenge to the use of the rebuttable presumption in two government programs, and seek (without legal basis) to facially invalidate a rebuttable presumption the Supreme Court has expressly found may be applied constitutionally. *See* MTD at 22-23; *Adarand Constructors v. Pena*, 515 U.S. 212, 237 (1995).

When the federal government abdicates its responsibility to defend regulations that have been lawfully adopted, implemented, and reauthorized, intervention is appropriate. Proposed Intervenors thus move to intervene to defend the 8(a) Regulation under Federal Rule of Civil Procedure 24(a)(2). Proposed Intervenors have acted promptly, intervening by the deadline for interventions set by this Court, ECF No. 44, and soon after Defendants indicated that the government would not defend the 8(a) Regulation. As businesses who benefit from the 8(a) program, either as a program participant or by providing services to 8(a) firms, Proposed Intervenors seek to intervene to protect their legally cognizable interests from being impaired by the disposition of this case. Alternatively, pursuant to Federal Rule of Civil Procedure 24(b), Proposed Intervenors seek permission to intervene, which should be granted because their motion is timely and their defense shares issues of fact and law with that of Defendants.

## BACKGROUND

### I.    Statutory and Regulatory Background

In 1953, Congress enacted the Small Business Act, 15 U.S.C. § 51 *et seq*., to "aid, counsel, assist, and protect . . . the interests of small-business concerns" and ensure that a "fair proportion"

of government contracts go to small businesses, 15 U.S.C. § 631(a). To that end, Congress created various programs to help provide fair contracting access for small businesses that satisfy certain criteria, including those owned by women or service-disabled veterans. *See id.* §§ 631(a), 657f, 637(m). One other such program is the 8(a) program, which seeks to support small businesses owned by "socially and economically disadvantaged individuals," ("SEDIs") who demonstrate potential success in the private sector. *Id.* § 637(a). Congress determined that individuals "who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" and due to "circumstances beyond their control" are "socially disadvantaged." *Id.* § 637(a)(5); 13 C.F.R. § 124.103(a). And Congress found that those individuals "include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. § 631(f)(1)(C).

Consistent with the Small Business Act and congressional intent, SBA's implementing regulation—the 8(a) Regulation—creates a rebuttable presumption that Black, Hispanic, Native, Asian Pacific, and Subcontinent Americans are socially disadvantaged for purposes of the program. *See* 13 C.F.R. § 124.103(b)(1). The Regulation's presumption does not create an entitlement or guarantee; instead, it may be rebutted by "credible evidence to the contrary." *Id.* § 124.103(b)(3). The Regulation also allows *any* person, regardless of race or ethnicity, to qualify as socially and economically disadvantaged. *See* 13 C.F.R. §§ 124.103(b)(3), (c)(1). Individuals who do not fall within one of the presumption's listed categories can demonstrate that they have been socially disadvantaged due to a distinguishing feature, *e.g.,* their "race, ethnic origin, gender, identifiable disability, long-term residence in an environment isolated from the mainstream of

American society, or other similar causes not common to individuals who are not socially disadvantaged." *Id.* § 124.103(c)(2)(i).

Separately, 8(a) program participants must also show that they are economically disadvantaged. An economically disadvantaged individual is one whose "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A). In evaluating economic disadvantage, SBA considers the personal financial condition of the individual claiming disadvantaged status, including their income from the prior three years, personal net worth, and the fair market value of all their assets. *See* 13 C.F.R. § 124.104(c).

Since August 2023, SBA has discontinued its use of the rebuttable presumption of social disadvantage to determine program eligibility. Instead, SBA makes an affirmative determination that an individual has established personal social disadvantage without the presumption.[3] The 8(a) program therefore does not even use the rebuttable presumption that Plaintiffs challenge here. *See id.*[4]

## II.    Proposed Intervenors

Proposed Intervenors are two businesses with substantial and direct legal interests in the continuation of the 8(a) program and its implementation through the 8(a) Regulation.

---

[3] *See* Memorandum on Impact of Recent Court Decision *(Ultima Servs. Corp. v. Dep't of Agric. (E.D. Tenn.))* on 8(a) Program, SBA (Aug. 18, 2023), https://perma.cc/NKD2-2B7V (citing *Ultima Servs. Corp. v. Dep't of Agric.*, 683 F. Supp. 3d 745 (E.D. Tenn. 2023)).

[4] In January 2026, SBA issued guidance stating that its "practice" is not to accept narratives to show social disadvantage, but the guidance does not explain how firms should now make that showing. *See  Guidance on 8(a) Program Mandate*, SBA (Jan. 22, 2026), https://perma.cc/U3S9-BQAC.

Proposed Intervenor Sage Services Group (herein "Sage") is a professional services company that provides engineering, workforce, and operational systems solutions to clients across the engineering, aerospace, education, consulting, and human capital industries. Exhibit A, Decl. of Sonya Hopson ("Hopson") ¶¶ 2–4, 16. Sage is an 8(a) certified small business, whose clients include federal agencies. *Id.* ¶¶ 5–7, 16. For many small business owners, like Sage's owner and CEO, the 8(a) program provides access to vital federal contracting and business development opportunities that have been historically foreclosed to socially and economically disadvantaged individuals. *Id.* ¶¶ 24–25. For example, as an 8(a) program participant, Sage can seek the advice of a business opportunities specialist dedicated to assisting 8(a) firms as they navigate federal contracting issues and regulations. *Id.* ¶ 25. These specialists also circulate relevant agency programs and outreach opportunities to 8(a) participants that the businesses might not have exposure to otherwise. *Id.* In the future, Sage intends to participate in SBA's mentor-protégé program, another initiative offered via the 8(a) program that pairs small businesses with larger, experienced firms for mentorship and guidance. *Id* ¶ 26. The business opportunities specialist and the mentor-protégé program are two of many unique business development tools that would be unavailable if Plaintiffs' challenge to the 8(a) Regulation were successful. *See* 63 Fed. Reg. at 35727. For Sage and others, the 8(a) program's existence is essential to small businesses fighting for a chance to grow and compete within their industries. *See* Hopson Decl. ¶ 27 (explaining how the 8(a) program helps small firms access, win, and maintain federal contracts as prime contractors, rather than subcontractors, and ultimately grow their businesses). Any attack on the program, including Plaintiffs' direct challenge to the 8(a) Regulation and indirect attack on other federal agency programs' that may rely on the Regulation, threatens those owners' access to opportunity, contrary to the statutory purposes of the 8(a) program.

Proposed Intervenor GovContractPros ("GCP") is an advocate for the 8(a) program and believes it is an important resource for small businesses, disadvantaged businesses, and the government itself. Exhibit B, Decl. of Trevor Skelly (Skelly) ¶¶ 15–18. GCP assists clients in obtaining and preserving certification for several SBA programs, including the 8(a) program, and helps small businesses navigate various business development activities. *Id.* ¶¶ 5–14. Plaintiffs' challenge, if successful, would significantly impact GCP business operations. Roughly half of GCP's business comes from advising 8(a) applicants and 8(a) certified firms. *Id.* ¶ 22. If the 8(a) program was significantly limited or curtailed, GCP estimates that it would lose close to $1 million in revenue and would be forced to lay off staff. *Id.* ¶ 24.

### III.    Procedural History

On November 17, 2025, Plaintiffs filed a complaint, alleging that the use of the 8(a) Regulation's rebuttable presumption violates their equal protection rights and that SBA's adoption of the categories of individuals presumed to be socially disadvantaged was "arbitrary and capricious" under the Administrative Procedure Act ("APA"). The Complaint and both counts focus on the legality of the rebuttable presumption of social disadvantage. But Plaintiffs request "declaratory and injunctive relief . . . that holds unlawful and sets aside" the entire 8(a) Regulation, which Plaintiffs define as "63 Fed. Reg. 35726 (June 30, 1998) (codified at 13 C.F.R. parts 121, 124, and 134)." Compl. ¶¶ 2, 7, 30.

The 8(a) Regulation, as Plaintiffs define it, encompasses much more than the rebuttable presumption of social disadvantage. The Regulation, which was promulgated following notice and extensive public comment as part of then-President Clinton's regulatory reform initiative, "streamlines the operation of the 8(a) [Business Development] program, eases certain restrictions perceived to be burdensome on Participants, amends certain eligibility procedures . . . deletes obsolete regulations . . . [and] reorganizes the regulations into identifiable substantive areas for

7

ease of use and clarity." 63 Fed. Reg. at 35726–27. The rebuttable presumption of social disadvantage is just one of the Regulation's many provisions, which also provide, *inter alia*, for the "eliminat[ion of] the requirement that a Participant must have specified SIC codes approved by SBA in its business plan in order to be eligible for 8(a) contracts, establish[ment of] consistent remedial measures for firms that do not meet their non-8(a) business activity targets, eas[ing of] certain joint venture restrictions, and establish[ment of] a mentor/protege program for developing 8(a) Participants." 63 Fed. Reg. at 35727.

Similarly, although Plaintiffs seek to vacate 13 C.F.R. parts 121 and 134, those provisions have nothing to do with establishing social and economic disadvantage for purpose of the 8(a) program, much less the rebuttable presumption. Title 13 C.F.R. part 121 establishes small business size eligibility provisions and standards,[5] while 13 C.F.R. part 134 likewise includes provisions well beyond the rebuttable presumption: It deals with the 8(a) program generally, establishing eligibility requirements, *id.* §§ 124.101-112; procedures for applying to the 8(a) program, *id.* §§ 124.201-207, exiting the 8(a) program, *id.* §§ 124.300-305, business development, *id.* §§ 124.401-405, contractual assistance, *id.* §§ 124.501-521, miscellaneous reporting requirements, *id.* §§ 124.601-604, the management and Technical Assistance Program, *id.* §§ 124.701-704; and

---

[5] 13 C.F.R. § 121 includes provisions to define small business concerns, *id.* § 121.201; to establish procedures for size protests and requests for formal size determinations, *id.* §§ 121.1001-1010, appeals of size determinations, *id.* §§ 121.1101-1103, and waivers of the nonmanufacturer rule for classes of products and individual contracts, *id.* §§ 121.1201-1206; and sets size eligibility requirements for SBA financial assistance, *id.* §§ 121.301-305, government procurement, *id.* §§ 121.401-413, sales or lease of government property, *id.* §§ 121.501-512, the 8(a) Business Development Program, *id.* §§ 121.601-604, the Small Business Innovation Research ("SBIR") and Small Business Technology Transfer ("STTR") programs, *id.* §§ 121.701-705, paying reduced patent fees, *id.* §§ 121.801-805, and for compliance with programs of other agencies, *id.* §§ 121.901-904.

eligibility, certification, and protests relating to federal small disadvantaged business programs, *id.* §§ 124.1001-1024.

Following three consent motions for stays of litigation, ECF Nos. 14, 17, and 19, Proposed Intervenors filed a motion to intervene on May 14, 2026, ECF No. 22, based on Defendants' representation that the parties were in active settlement discussions to resolve Plaintiffs' Complaint.[6]  On May 20, 2026, Plaintiffs and Defendants filed a fourth joint motion to stay litigation pending continued settlement discussions, ECF No. 31, and a joint motion to defer consideration of the pending motion to intervene, ECF No. 32.[7] In their motion to defer consideration, the parties represented that they "take no position on the pending motion to intervene" but instead believed the motion was "premature because Defendants' position on the Plaintiffs' claims…ha[d] yet to be determined." ECF No. 32 at 1.  The Court granted the parties' request to stay litigation an additional seven days, until May 26, 2026. ECF No. 33. The Court also granted the parties' motion to defer consideration of the pending motion to intervene, in part, dismissing Proposed Intervenors' motion without prejudice. ECF No. 34.

On May 26, 2026, Defendants requested leave to file a letter from the Solicitor General to the Speaker of the House of Representatives regarding the 8(a) program's rebuttable presumption, issued pursuant to 28 U.S.C.§ 530D on November 25, 2025 (the "530D Letter"), as Defendants' response to Plaintiffs' Complaint. ECF No. 37. The Court granted that motion on May 28 and ordered "that any proposed intervenor must move to intervene in this action by June 29, 2026." ECF No. 44. The 530D letter states that the government "will no longer defend the constitutionality

---

[6] Proposed Intervenors first moved to intervene on May 12, 2026, ECF No. 21, and then refiled their motion on May 14, 2026, to cure procedural deficiencies.

[7] The parties originally filed these requests as one motion, ECF No. 29, and then re-filed them as two separate motions—one requesting a stay and the other requesting deferred consideration—per this Court's instructions.

of the [8(a)] regulations' race-based presumption." ECF No. 45 at 2.

**ARGUMENT**

Proposed Intervenors meet all four requirements for mandatory intervention under Federal Rule of Civil Procedure 24(a) and should be allowed to intervene as a matter of right. In the alternative, permissive intervention under Rule 24(b) is appropriate here given common questions of law and fact, and because intervention is timely and not prejudicial.

## I.    Proposed Intervenors Have a Right to Intervene.

Proposed Intervenors are entitled to intervene as of right under Rule 24(a). Rule 24(a)(2) allows for intervention, by right, when (1) the motion to intervene is timely, (2) the intervenor asserts an interest in the controversy, (3) the disposition of the case may impair or impede the intervenor's ability to protect that interest, and (4) that interest is not adequately represented by the existing parties. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). Courts "allow intervention where no one would be hurt and the greater justice could be attained." *John Doe #1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). Rule 24(a)'s requirements are met here. Proposed Intervenors have a variety of material interests in the outcome of this case and moved to intervene promptly when it became clear that Defendants will not adequately defend the 8(a) Regulation and Proposed Intervenors' interests.

### A.    This Intervention Motion is Timely.

Proposed Intervenors' motion is timely. Rule 24(a)(2)'s timeliness requirement considers: (1) how long the potential intervenor knew or reasonably should have known of her stake in the case; (2) the prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let her intervene; and (4)

10

any unusual circumstances. *Glickman*, 256 F.3d at 376. These factors are a framework and "not a formula for determining timeliness," and "[a] motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *Id.* at 376 (cleaned up). Rather, timeliness analyses are "'contextual,' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner.'" *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (quoting *Sierra Club*, 18 F.3d at 1205).

Proposed Intervenors "sought to intervene 'as soon as it became clear' that [their] interests 'would no longer be protected' by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)) (allowing intervention after appellate decision was rendered but before deadline to seek review *en banc*)). Proposed Intervenors first moved to intervene on May 14, 2026, after Defendants indicated that the parties were actively involved in settlement discussions. But when the government represented that it was still determining its position on Plaintiffs' claims such that the proposed intervention was "premature," ECF No. 32 at 1, the Court denied the pending motion to intervene without prejudice, *see* ECF No. 34. Defendants then filed the 530D Letter in response to Plaintiffs' Complaint, setting forth the government's position that it will not defend the constitutionality of the 8(a) Regulation's rebuttable presumption. ECF No. 45 at 2. The Court set June 29, 2026, as the deadline for any motions to intervene. ECF No. 44.

Defendants' filing the 530D Letter as their response to the Complaint in this case, as opposed to Defendants' previous contention that the government had not yet determined its position on Plaintiffs' claims, demonstrates that Proposed Intervenors can no longer "count on [the government] to defend the challenged regulation, [and therefore] . . . must be allowed to intervene

11

to ensure the regulation's continued defense." *Cook Cnty. v. Mayorkas*, 340 F.R.D. 35, 45 (N.D. Ill. 2021), *aff'd sub nom. Cook Cnty. v. Texas*, 37 F.4th 1335 (7th Cir. 2022). It further suggests that the parties are "complacent or non-adversarial as to not protect the interests of potential intervenors." *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *4 (5th Cir. May 15, 2025).

Proposed Intervenors acted promptly, timely filing this motion by the June 29 deadline to intervene and a month after Defendants' response to Plaintiffs' Complaint, well within the lengths of time this Circuit has deemed timely for interventions. *See Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021) (citing Fifth Circuit cases treating intervention as timely where intervenors delayed three weeks, one month, thirty-seven days, and forty-seven days past the accrual of their interest); *cf. Davis v. Lifetime Cap., Inc.*, 560 F.App'x 477, 493 (6th Cir. 2014) ("A court cannot squeeze a proposed intervenor from both ends by first ruling a motion to intervene premature and then ruling a second motion to intervene too late." (citing *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989))).

Intervention will cause no prejudice to the Court or the parties in this matter—the "most important consideration" in evaluating timeliness. *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970). This litigation is still in its early stages, with no pending motions before the court or briefing schedule.[8] Should the Court grant intervention, Proposed Intervenors would propose filing all briefs on the date Defendants' briefs would otherwise be due. The only consequences that intervention would have for Plaintiffs "are those commonly associated with defending a ruling or judgment on appeal." *Ross*, 426 F.3d at 756. Such "inconveniences" do not

---

[8] The Court has instructed the parties and any proposed intervenors to submit a joint status report proposing a schedule for further proceedings by July 20, 2026. ECF No. 44.

12

constitute sufficient prejudice to deny intervention, *id.*, and, in any event, were not created by the 32 days between Proposed Intervenors' interest diverging from that of the government and filing this motion.

**B.      Proposed Intervenors Have a Legally Protectable Interest in the Existence and Effective Implementation of the 8(a) Regulation.**

Sage, a certified 8(a) company, and GCP, which provides services to 8(a) companies, have an interest in the 8(a) Regulation, such that if there is a risk the government will not defend the Regulation adequately, Intervenors must. To successfully intervene, an intervenor must have a "direct, substantial, legally protectable interest" in a case. *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996) (en banc) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)); *see also Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992) ("The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.") (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). This is not a demanding standard: "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659.

Rule 24(a) recognizes a broad range of interests. "Property interests are the quintessential rights Rule 24(a) protects, but . . . Rule 24(a)(2) does not require 'that a person must possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2).'" *La Union*, 29 F.4th at 305 (quoting *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987)). "Non-property interests are sufficient to support intervention when, like property interests, they are concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658. For example, the Fifth Circuit allowed intervention based on petition organizers' longstanding advocacy against

13

their mayor and city council. *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). And "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (internal citation omitted); *see also Jurisich Oysters, LLC v. U.S. Army Corps of Eng'rs*, No. 24-106, 2024 WL 3639528, at *1 (E.D. La. Aug. 2, 2024) (finding environmental advocacy groups' interest in an action about a National Marine Fisheries Service preservation project, based on "local concerns for restoration and protection of the marshlands, people, animals, fisheries, and plants of southeastern Louisiana," sufficient to allow intervention, after initially finding them adequately represented), *on reconsideration*, 2024 WL 4346410 (E.D. La. Sept. 30, 2024) (allowing environmental groups to intervene base on their particularized interest in local preservation).[9]

Both Sage and GCP have a legal interest in the preservation of the 8(a) Regulation. Sage relies on the 8(a) program and the implementing provisions of the 8(a) Regulation as a tool for growth and business development. An "'intended beneficiary of a government regulatory system' has a legally protected interest in a case challenging that system." *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *3 (5th Cir. Dec. 7, 2022) (quoting *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 567–69 (5th Cir. 2016)). Here, Sage's owner-CEO is one such intended beneficiary of the 8(a) program. She is a socially (and economically) disadvantaged small business owner, which she demonstrated, not through the

---

[9] An intervening defendant does not need to "demonstrate its standing" under Article III because intervening as a defendant does not "entail [] invoking a court's jurisdiction." *Va. H. of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). And at any rate, an intervenor's interest satisfies any standing requirement "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659.

14

rebuttable presumption Plaintiffs challenge, but through a narrative submitted to SBA. Hopson ¶ 22. The narrative detailed Sage's owner-CEO's experiences of racial discrimination that ultimately impaired her professional growth and business development, exemplifying that Sage's owner qualifies as socially disadvantaged for purposes of the 8(a) program. If the 8(a) Regulation is vacated, Sage's ability to avail itself of the 8(a) program's benefits will be frustrated and delayed, if not lost entirely. Although the 8(a) program is statutorily authorized, without the implementing Regulation, it could be impossible for Sage and other participants to benefit from the business development services offered by SBA to assist socially and economically disadvantaged businesses. This loss will harm Sage, including its revenue and ability to expand, thereby perpetuating the very inequities the 8(a) program was designed to combat.

GCP likewise has a legal interest in preserving the 8(a) Regulation. GCP built its business around providing services to small businesses, especially 8(a) firms. If the 8(a) Regulation is vacated and the 8(a) program is significantly curtailed, GCP estimates that it could lose over one million dollars in revenue and will be forced to make layoffs and reduce compensation for remaining staff. Skelly ¶ 24. Though generally intervention as a matter of right is not granted "for *purely* 'ideological, economic, or precedential' reasons," *NextEra*, 2022 WL 17492273, at *3 (quoting *Texas*, 805 F.3d at 658) (emphasis added), "'economic interests can justify intervention when they are directly related to the litigation,'" *id.* (quoting *Wal-Mart*, 834 F.3d at 568). GCP's economic interests are directly related to the requested relief in Plaintiffs' Complaint. And as a longstanding advocate for small businesses, whose founder, John Shoraka, worked hard to implement the 8(a) program as a former senior official at SBA, *see* Skelly ¶¶ 7–8, GCP has "demonstrated a particular interest" in protecting the Regulation and the contracting opportunities for small and disadvantaged businesses that the 8(a) program provides. *City of Houston*, 668 F.3d

15

at 294 (organizers who helped engineer challenged rule had particular interest sufficient to allow intervention). Proposed Intervenors' interests meet the standard for intervention under Rule 24(a)(2).

### C.    Proposed Intervenors' Interests Will Be Impaired If Plaintiffs Succeed.

Plaintiffs' allegations, on their face, are plainly limited to the validity of the use of the rebuttable presumption in the 8(a) Regulation. *See* Compl. ¶ 26 ("As described below, the SBA Regulation was issued, in part, in response to a Department of Justice proposal regarding federal procurement affirmative-action programs that defended maintaining the racial presumption *at issue here*") (emphasis added); *id.* ¶ 121 ("The SBA Regulation's racial presumption therefore violates the Equal Protection Clause of the Fourteenth Amendment and Plaintiffs' Fifth Amendment Due Process rights to equal treatment."); *id.* ¶ 153 ("The SBA's decision to create a presumption that all members of certain races are socially disadvantaged is, accordingly, unsupported by the record and is therefore arbitrary and capricious."). Yet, Plaintiffs ask the Court to vacate the 8(a) Regulation in its entirety, Compl. at 30, which would include all of "63 Fed. Reg. 35726," as Plaintiffs have defined the 8(a) Regulation.[10] Such relief would render the 8(a)

---

[10] Defendants represent that Plaintiffs have "consent[ed] to construing their request for relief as limited to 13 C.F.R. § 124.103(b), and not the broader Section 8(a) program regulation…". ECF No. 37 at ¶ 4. But Plaintiffs have not amended their Complaint or their requested relief, nor have they obtained the parties' consent or leave of Court to do so. *See* Fed. R. Civ. P. 15 (a)(2). At any rate, numerous courts have upheld the constitutionality of the rebuttable presumption. *See* MTD at 23. The Court should not permit Plaintiffs and the government to use this case, absent Article III standing as explained in the Motion to Dismiss, to obtain a ruling or advisory opinion on the constitutionality of a regulation that is not being used by SBA, Treasury, or DHS, *see* MTD at 2, 13-15, or attempt to negate other competent court decisions via settlement or consent decree. *See* ! *United States v. City of New Orleans*, 35 F. Supp. 3d 788, 793 (E.D. La.), *aff'd*, 731 F.3d 434 (5th Cir. 2013)("When presented with a proposed consent decree, a court must ascertain that the settlement is 'fair, adequate and reasonable' and is not the product of 'fraud, collusion, or the like.'" (quoting *United States v. City of Miami*, 664 F.2d 435, 440–441 (5th Cir. 1981)); *see also Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir. 1983) (explaining courts may not approve consent decrees that are "a product of collusion").

program inoperable, as 63 Fed. Reg. 35726 incorporates much more than the challenged presumption or even the program's eligibility provisions. Further, the premise of Plaintiffs' constitutional challenge to the Regulation is flawed—the Supreme Court has held that the rebuttable presumption may be applied constitutionally. *See Adarand*, 515 U.S. at 237; *see also* MTD at 22-23. And, as detailed above, Proposed Intervenors have a significant interest in the continuation of the 8(a) program, as implemented by the 8(a) Regulation. *Supra* at 15-18. A robust defense of the Regulation is necessary to protect these interests.

> **D.      SBA Will Not Adequately Represent Proposed Intervenors' Interests Going Forward.**

Proposed Intervenors satisfy Rule 24(a)'s inadequacy requirement. The burden of proving that the existing parties do not adequately represent Proposed Intervenors' interests is minimal. *Glickman*, 256 F.3d at 380. "The potential intervener need only show that the representation *may* be inadequate." *Id.* (quoting *Espy*, 18 F.3d at 1207); *see Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires."); *id.* (lack of unity in all objectives supports finding of inadequate interest). Lack of adequate representation can be shown even in cases where the intervenor's interest "may diverge in the future, even though, at [the time of intervention] they appear to share common ground." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002). While this Circuit presumes adequate representation when a "putative representative is a governmental body," *Texas*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005), that presumption may be overcome when an intervenor's "'interest is in fact different from that of the [governmental entity] and that . . . interest will not be represented by [it].'" *id*. at 662 (quoting *Edwards*, 78 F.3d at 1005).

17

Here, Defendants have abandoned any constitutional defense of the 8(a) Regulation's rebuttable presumption. *See* ECF No. 45. Defendants' 530D Letter states that DOJ has taken the position that it will "no longer defend the constitutionality of the [8(a) program] regulations' race-based presumption." ECF No. 45 at 1. And given Defendants' representation that the parties are discussing "potential paths to a mutually agreement settlement," ECF No. 19 at 1, it is reasonable to expect that Defendants will acquiesce to a resolution that would undermine the 8(a) program and impair Proposed Intervenors' interests. [11] The government does not represent beneficiaries of the 8(a) Regulation, like the Proposed Intervenors, and is not bound by their interests in its litigation decisions. Absent those client obligations, it may make decisions in settlement discussions based on changed policy preferences, other constituent interests, or conservation of resources. So even if the Court "cannot say for sure that the state's more extensive interests will in fact result in inadequate representation," it is clear that "they *might*, which is all that the rule requires." *Brumfield*, 749 F.3d at 346 (emphasis added).

Absent intervention, the 8(a) Regulation will be inadequately defended, denying the Court the benefits of adversarial briefing that would show (among other things) that Plaintiffs (1) fail to

---

[11] Though the 530D Letter provides that DOJ will "continue[] to defend other aspects of the 8(a) program that employ race-neutral criteria for determining social disadvantage," it is unclear, at best, what (if any) defense of the 8(a) program the government will provide here. Further, given the weaknesses in Plaintiffs' standing arguments, the relief sought, the absence of the government to seek to dismiss or narrow the Plaintiffs' claims, and the parties continued settlement discussions call into question whether the parties are truly adversarial. the parties continued settlement discussions call into question whether the parties are truly adversarial, given the plain discrepancy between the strength of Plaintiffs' claims and any possibility of settlement. The rebuttable presumption Plaintiffs challenge is neither being used by the SBA, nor is it used in the two programs in which Plaintiffs contend they are unable to compete in. Plaintiffs have not come close to making allegations sufficient to satisfy basic standing requirements. And Plaintiffs seek relief far broader than any relief they could obtain from this Court based on the allegations they make and the harms they allege. In sum, there is no reasonable basis for the government to settle this case in the interests of the United States, rather than filing what would be a standard motion to dismiss.

18

demonstrate injury-in-fact sufficient for standing, (2) request relief exceeding this Court's jurisdictional reach, and (3) present an erroneous facial challenge to the Regulation because Plaintiffs cannot show that the rebuttable presumption is unconstitutional in all of its applications. *See generally* MTD. Without intervention there is also an increased likelihood that parties would reach a resolution of this case that would harm Proposed Intervenors, based on a rebuttable presumption that is not even being used by SBA or the other programs Plaintiffs allege they would like to apply to, and that the Supreme Court has held can be implemented in constitutional ways. *Adarand*, 515 U.S. at 237.

## II.    Alternatively, the Court Should Grant Proposed Intervenors Permission to Intervene.

Permissive intervention is also appropriate. Rule 24(b) allows this Court to "permit anyone to intervene" who has filed a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). "[C]laim or defense" is "construed liberally." *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975); *see also Stallworth*, 558 F.2d at 269. And the "common question of law or fact" requirement is satisfied so long as an intervenor's arguments are "related to" the claims in the lawsuit. *Cf. Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 825 (5th Cir. 2003) (common question of law and fact must be "related to" proposed intervenor's arguments). Courts often allow organizations to permissively intervene where, as here, the potential intervenors may provide unique perspective or expertise for a shared legal defense. *See, e.g.*, *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (Courts should consider permitting intervention when intervenors may "contribute significantly to the development of the underlying factual issues"); *Wachob*

19

*Leasing Co., Inc. v. Gulfport Aviation Partners*, *LLC*, No. 1:15-cv-237, 2016 WL 10568063, at *2 (S.D. Miss. Nov. 30, 2016) (same).

The Proposed Intervenors qualify for permissive intervention because, at a minimum, Proposed Intervenors' defense of the Regulation will share a common issue of law and fact with the main action. Proposed Intervenors will also provide the Court with their unique perspective and experience about the true impacts of the Regulation and potential harm if the requested relief in Plaintiffs' Complaint is granted, as well as offer a robust legal defense of the Regulation that may otherwise be lacking, and highlight the jurisdictional deficiencies in Plaintiffs' Complaint and scope of their requested relief. *See generally* MTD.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors ask the Court to grant their motion to intervene.

Dated: June 29, 2026

Respectfully submitted,

/s/ *Cortney Robinson Henderson*
Cortney Robinson Henderson*
Emily Sue Newton*+
Steven Y. Bressler*
Robin F. Thurston*
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Main: 202-448-9090
crhenderson@democracyforward.org

William Most (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: 985-441-9355
williammost@gmail.com

Sarah von der Lippe*
(D.C. Bar No. 454585)

20

Minority Business Enterprise Legal Defense and
Education Fund, Inc.
1104 East Capitol St. NE
Washington, D.C. 20002
(202) 744-5415
Outsidecounsel1@mbeldefwatchdog.org

*Counsel for Proposed Intervenors*

*\*Admitted Pro Hac Vice*

*+ Of Counsel; located in Ohio; and admitted
only in Virginia*